UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JIMMY ERIC GREEN,

      Petitioner,

                          CASE NO. 5:10-cv-12824
V.                        JUDGE JOHN CORBETT O'MEARA
                          MAGISTRATE JUDGE PAUL J. KOMIVES

CARMEN PALMER,

      Respondent.[1]
_____/

**Report and Recommendation**

I.    <u>RECOMMENDATION</u>: The Court should deny petitioner's application for the writ of habeas corpus and should deny petitioner a certificate of appealability.

II.    <u>REPORT</u>:

A.    *Procedural History*

    1.    Petitioner Jimmy Eric Green is a state prisoner, currently confined at the Michigan Reformatory in Ionia, Michigan.

    2.    On January 30, 2008, petitioner was convicted of first-degree felony murder, MICH. COMP. LAWS § 750.316(1)(b); and first-degree criminal sexual conduct, MICH. COMP. LAWS § 750.520b, following a bench trial in the Washtenaw County Circuit Court. On February 26, 2008, he was sentenced to concurrent prison terms of life on the murder conviction and 40 to 60 years on the criminal sexual conduct conviction.

    3.    Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

---

[1] By Order entered this date, Carmen Palmer has been substituted in place of Carol Howes as the proper respondent in this action.

2

I. MR. GREEN'S CONVICTIONS CANNOT BE SUSTAINED BECAUSE THERE WAS CONSTITUTIONALLY INSUFFICIENT EVIDENCE THAT HE COMMITTED THE HOMICIDE, OR THAT THERE WAS EVEN A SEXUAL ASSAULT.

II. MR. GREEN WAS DENIED THE DUE PROCESS RIGHT TO AN IMPARTIAL FACT-FINDER WHEN, AT HIS TRIAL FOR MURDER AND SEXUAL ASSAULT OF AN EASTERN MICHIGAN UNIVERISTY STUDENT, THE JUDGE WHO PRESIDED OVER HIS BENCH TRIAL WAS INTIMATELY ASSOCIATED WITH THAT SAME INSTITUTION, AND ESPECIALLY WHERE HIS TRIAL OCCURRED IN THE WAKE OF THE INFAMOUS AND HIGHLY CONTROVERSIAL MURDER OF ANOTHER STUDENT AT THAT SAME INSTITUTION, WHICH RESULTED IN THE SCORNING OF UNIVERSITY OFFICIALS.

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence. *See People v. Green*, No. 284301, 2009 WL 3165370 (Mich. Ct. App. Oct. 1, 2009) (per curiam).

4. Petitioner, proceeding pro se, sought leave to appeal the same claims to the Michigan Supreme Court. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Green*, 485 Mich. 1083, 777 N.W.2d 416 (2010).

5. Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on July 19, 2010. As grounds for the writ of habeas corpus, he raises two claims for relief:

(1) PETITIONER WAS DEPRIVED OF HIS DUE PROCESS RIGHTS UNDER THE SIXTH AND FOURTEENTH AMENDMENT WHERE THE PROSECUTION FAILED TO PRESENT CONSTITUTIONALLY SUFFICIENT EVIDENCE THAT PETITIONER COMMITTED THE HOMICIDE, OR THAT THERE EVEN WAS A SEXUAL ASSUALT.

(2) PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHT UNDER THE SIXTH AND FOURTEENTH AMENDMENT TO HAVE A TRIAL BY AN IMPARTIAL FACT FINDER IN LIGHT OF THE TRIAL JUDGE'S LONGSTANDING AFFILIATION WITH EASTERN MICHIGAN UNIVERSITY.

6. Respondent filed an answer on January 25, 2011, contending that petitioner's claims are without merit.

7. Petitioner filed a reply to respondent's answer on February 8, 2011.

B. *Factual Background Underlying Petitioner's Conviction*

The factual background underlying petitioner's conviction was accurately summarized in the answer in opposition to petition for writ of habeas corpus filed by respondent:

Petitioner was convicted of first-degree felony murder with the predicate felony of first-degree criminal sexual conduct following a bench trial before the Honorable Donald E. Shelton on January 30, 2008. The conviction occurred over 20 years after Eastern Michigan University student Lora Jean McBride was raped and stabbed 23 times resulting in her death. The conviction was largely based on DNA evidence that was tested when this case was reopened in 2001 as a cold case. With the help of modern scientific tools, evidence of sperm recovered from Lora's body was matched to that of petitioner. Petitioner claimed that he had consensual sex with the victim, but that claim was ultimately rejected by the judge.

Lora was a member of the Air Force Reserves and was attending Eastern Michigan University ("EMU") on an educational grant. She took a full load of classes at EMU in addition to working full time at an automobile research facility in Ann Arbor. (TT, Vol I, p 83). Lora's sister and roommate, Sue Burns, testified that she maintained a regimented and structured schedule for herself, which included a healthy diet and exercise. (TT, Vol I, p 24). She also testified that Lora only occasionally spent time with friends outside of work, and that her schedule was too busy for dating or an otherwise active social agenda. (TT, Vol I, p 44).

On May 23, 1983, Lora began her daily routine with a morning walk to class. (TT, Vol I, p 24). She generally used a pathway through Peninsular Park in Ypsilanti to get to campus. (TT, Vol I, p 54). However, Lora did not make it to her 8 a.m. class and did not go to her work at 3 p.m. that afternoon. Co-worker Kyle Pritula testified that Lora would never fail to show up at work without calling. (TT, Vol I, p 86). After work, Pritula called Sue Burns to inform her that Lora had not shown up to work that day. (TT, Vol I, p 87). Burns contacted the police, but was told that she would have to wait 24 hours before she filed a missing persons report. (TT, Vol I, p 30). Burns called the police again at 8 a.m. on the next day, May 24, 1983, and reported that Lora had not come home. (TT, Vol I, p 31). Burns testified that it was unheard of for Lora to stay out all night. (TT, Vol I, p 32).

That afternoon, EMU student Paul Niemi and his roommate Paul Ballowitz went to Peninsular Park to go fishing. (TT, Vol I, p 98). Niemi observed a body off to the left of the trail leading towards the river. (TT, Vol I, p

100). Niemi ran down to the river to get Ballowitz and confirmed his observation that he had discovered a body. (TT, Vol I, p 101). Niemi testified that the body was "obviously a woman" and that there was "a lot of blood" over her torso and the front of the body. (TT, Vol I, p 102). Niemi also observed that the body was "obviously" dead, and that it was fully clothed except that her pants were pulled down to the knees and her underwear had been removed. (TT, Vol I, p 108). Niemi and Ballowitz then proceeded to contact the police. (TT, Vol I, p 101).

Officers from the Ypsilanti Police Department and the Washtenaw County Sherriff's Department responded to the scene and secured the area. (TT, Vol II, p 24). State Police forensic examiner Edward Davis testified that the victim's blood was all in the immediate area of her body and that there was no evidence that her body had been dragged or otherwise moved from another location. (TT, Vol II, p 70). An autopsy of the victim documented that she had endured "[m]ultiple stab wounds to the anterior neck, chest, abdomen, head, left buttock, and right hand," one of which had severed her left jugular vein and also cut her left carotid artery. (People v. Green, Mich. Ct. App. No. 284301 (October 1, 2009), p 1). Lora's body was transferred to the University of Michigan hospitals, where Davis took samples from her vagina, anus, mouth, hair, and under her fingernails. (TT, Vol II, p 54). The samples were allowed to dry, sealed, and then sent to the Michigan State Police Crime Laboratory for processing. (TT, Vol II, p 57). DNA testing was not available at the time the samples were initially tested. (TT, Vol III, p 48). Charlotte Day performed tests on the evidence, and determined that there were sperm cells on the swab taken from Lora's vagina. (TT, Vol II, p 81). However, no arrests were made.

In 2001, the case was assigned as a "cold case" to Detective Robert Peto of the Ypsilanti Police Department. (TT, Vol II, p 122). Detective Peto re-examined the evidence and sent the biological samples to the Michigan State Crime Lab for DNA analysis. (TT, Vol III, p 8). The Combined DNA Indexing System ("CODIS") returned a match from the semen taken from the slide and the envelope containing Lora's vaginal swab to the DNA on file of petitioner. (TT, Vol III, pp 10, 63-64). The DNA test excluded two other suspects as the source of the semen and petitioner became the prime suspect. (TT, Vol III, pp 10, 59). Based on the CODIS match, Detective Peto obtained a search warrant in order to obtain known samples from petitioner. (TT, Vol II, p 124). Sergeant Craig Annas and Detective Peto went to Lakeland Correctional Facility to obtain the DNA sample and to interview petitioner. (TT, Vol II, pp 124-125). Petitioner admitted that he worked near Peninsular Park in 1983 and he often fished in the park in the early morning. (TT, Vol II, pp 127-129). Moreover, he stated that he would sometimes fish with his cousin, Duck, and that Duck was an EMU employee. (TT, Vol II, p 128). Detective Peto testified that they asked petitioner if he knew a Lora McBride. (TT, Vol III, p 120). Petitioner claimed that the only McBride he knew was Deanna McBride – a heavy-set African-American woman. (TT, Vol III, pp 120-121). Petitioner also claimed that he had "fucked a lotta whores and may have up in that area" but that "he does not mess with white women." (TT, Vol III, p 121).

Petitioner's DNA was tested and matched the sperm located on the vaginal swab. (TT, Vol III, pp 68-69). The odds of another African-American matching that same DNA profile were "one in one hundred and thirty-five point five quadrillion people [135,500,000,000,000,000]." (TT, Vol III, p 69). Forensic scientist Heather Vitta testified that this was a "rare profile." (TT, Vol III, p 70).

Petitioner took the stand in his own defense and claimed that he had a consensual sexual encounter with Lora after a party, in his car, the weekend before she was murdered. (TT, Vol III, p 107). On cross-examination, petitioner could not identify what day of the weekend this sexual act allegedly took place, or what party he met Lora at. (TT, Vol III, pp 111-112). Petitioner also disclaimed that he told the police that he only knew Deanna McBride and that he "didn't mess with white women." (TT, Vol III, pp 112-113).

Following closing arguments, the trial court announced his findings of fact and found petitioner guilty of first-degree felony murder with a predicate felony of first-degree criminal sexual conduct:

> The Court: I will, first of all, indicate that I have reviewed the evidence and in particular, spent some time also reviewing the autopsy report which was not testified to directly, but which I read in some detail. Give me just a moment.
>
> I'm going to state my findings of fact based on that. I will state preliminarily that, although relied upon by the Prosecutor and argued at some length, I personally find it unnecessary to consider the Other Acts evidence submitted by the Prosecution and my verdict is not based on that information.
>
> The evidence concerning this case alone establishes that the five-foot-three-inch, one hundred and thirty-five pound Lora McBride was brutally murdered on May 23rd, 1983 when she was stabbed twenty-three times and as the doctors say, bled out, bled to death. The evidence at the scene as documented in the photographs of the condition of her body including the positioning of her clothes also establishes to me that she was penetrated and sexually assaulted at the same time in the woods where she was found. That's a crucial finding for me. The DNA evidence uncovered some twenty years later establishes beyond a reasonable doubt that the Defendant's sperm was in the victim's vagina. There was no evidence of anyone else's sperm in the victim or anywhere else at the scene. The testimony of the Defendant, that he had consensual sexual intercourse with the victim at some previous day or weekend is inconsistent with the physical evidence at the scene and with the testimony of the other witnesses concerning the character and habits of the victim. That testimony is not credible.
>
> I find beyond a reasonable doubt that the Defendant sexually penetrated Lora McBride by force and coercion and while armed with a knife or similar sharp object, and resulting in severe

> injuries to her. I therefore, find the [defendant] guilty of Criminal Sexual Conduct in the First Degree as alleged in Count III.
> I further find beyond a reasonable doubt that while in the perpetration of that sexual assault, the Defendant did murder Lora McBride by repeatedly stabbing her with a knife or other similar object. I therefore find the Defendant guilty of Felony Murder as alleged in Count I.
> [TT, Vol III, pp 150-152.]

Answer, at 3-7.

### C. *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). See *Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also, Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless

arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams,* 529 U.S. at 413); *see also, Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also, Williams,* 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of

[Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also, Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 f.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.*Sufficiency of the Evidence (Ground 1)*

In Ground 1, petitioner contends that the prosecution presented insufficient evidence to establish his guilt beyond a reasonable doubt. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.*Clearly Established Law*

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). Under the pre-AEDPA standard for habeas review of sufficiency of the evidence challenges, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). Reviewing courts must view the evidence, draw inferences and resolve conflicting inferences from the record in favor of the prosecution. *See Neal v. Morris*, 972 F.2d 675, 678 (6th Cir. 1992). When determining the sufficiency of the evidence, the court must give circumstantial evidence the same weight as direct evidence. *See United States v. Farley*, 2 F.3d 645, 650 (6th Cir. 1993). However, under

the amended version § 2254(d)(1) a federal habeas court must apply a more deferential standard of review of the state court decision. Thus, the question here is whether the Michigan Court of Appeals application of the *Jackson* standard was reasonable. *See Gomez v. Acevedo*, 106 F.3d 192, 198-200 (7th Cir. 1997), *vacated on other grounds sub nom. Gomez v. DeTella*, 522 U.S. 801 (1998); *Restrepo v. DiPaolo*, 1 F. Supp. 2d 103, 106 (D. Mass 1998).

While a challenge to the sufficiency of the evidence on an established element of an offense raises a federal constitutional claim cognizable in a habeas corpus proceeding, *see Jackson*, 443 U.S. at 324, "[t]he applicability of the reasonable doubt standard . . . has always been dependent on how a State defines the offense that is charged in any given case." *Patterson v. New York*, 432 U.S. 197, 211 n.12 (1977); *see also*, *Jackson*, 443 U.S. at 324 n.16; *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). Thus, "[a] federal court must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999).

Under Michigan law, the elements of first degree felony murder are: "(1) the killing of a human being, (2) with the intent to kill, to do great bodily harm was the probable result; (3) while committing, attempting to commit, or assisting the commission of any of the felonies specifically enumerated in M.C.L § 750.316." *People v. Turner*, 213 Mich. App. 558, 566, 540 N.W.2d 728, 732 (1995). To prove CSC I under Michigan law, MCL 750.520b(1)(f), defendant may be found guilty if he (1) causes personal injury to the victim, (2) engages in sexual penetration with the victim, and (3) uses force or coercion to accomplish the sexual penetration. *People v. Nickens*, 470 Mich. 622, 629, 685 N.W.2d 657 (2004).

2.*Analysis*

In his habeas petition and reply brief, petitioner argues that the prosecution did not present any evidence at the trial that the petitioner committed the murder or engaged in any type of criminal sexual conduct with the victim, and thus, there was insufficient evidence to convict him. The Michigan Court of Appeals rejected this claim and found beyond a reasonable doubt that while in the perpetration of the sexual assault, the defendant did murder the [victim] by stabbing her, leaving her in the bushes to bleed to death. *Green*, 2009 WL 316530, at *2. This conclusion was reasonable. In determining the sufficiency of the evidence, the Court must give circumstantial evidence the same weight as direct evidence. *See United States v. Farley*, 2 F.3d 645, 650 (6th Cir. 1993). Here, there was strong circumstantial evidence that the petitioner was at the scene of the murder. The petitioner's cousin, Charles Jones, testified that he lived near Peninsular Park and that he and the petitioner used to fish at the river where Lora McBride's body was found. Petitioner also admitted that he worked near Peninsular Park in 1983 and he often fished in the park in the early morning. On the morning of May 23, 1983, two witnesses described being approached by an African American male, around 5'9", wearing a jacket and dark pants, while walking along the path to the river. When petitioner was originally confronted by police he had claimed that the only McBride he knew was Deanna McBride- a heavy-set African American woman. When petitioner took the stand in his own defense, he contradicted his prior statement of not knowing the victim and stated that he had a consensual sexual encounter with Lora after a party in his car. He could not identify what day of the weekend this alleged sexual encounter took place or what party he had met Lora at.

There was also substantial evidence found at the scene of the crime that a rational trier of fact could conclude proved beyond a reasonable doubt that petitioner sexually assaulted the victim and murdered her. The petitioner's DNA was found inside the victim's vagina and there was no

evidence of other semen in or on the victim. The petitioner's body was found lying in the woods on her back, covered in blood and with her pants pulled down to her knees. The blood was in the immediate area around the body. The evidence of the petitioner's DNA along with this circumstantial evidence adequately supports the trial court's finding beyond a reasonable doubt that the "defendant penetrated the victim's vagina by applying force and causing her personal injury, MCL 750.520b(1)(f), and that defendant killed the victim 'in the perpetration of … criminal sexual conduct in the first … degree.'" *Green*, 2009 WL 316530, at *2; MCL 750.316(1)(b).

The Michigan Court of Appeals reasonably applied the clearly established Supreme Court precedent, viewing the evidence in a light most favorable to the prosecution. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on his sufficiency of the evidence claim.

E. *Judicial Bias (Ground 2)*

1. *Clearly Established Law*

Perhaps "[n]o right is more fundamental to the notion of a fair trial than the right to an impartial judge." *Bracy v. Gramley,* 81 F.3d 684, 696 (7th Cir. 1996) (Rovner, J., dissenting), *rev'd*, 520 U.S. 899 (1997); *see also*, MASS. CONST. of 1780, pt. 1, art. 29. Thus, "the Due Process Clause clearly requires a 'fair trial in a fair tribunal,' before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy*, 520 U.S. at 904-05 (citation omitted) (quoting *Withrow v. Larkin*, 421 U.S. 35, 46 (1975)). "Because judicial bias infects the entire trial process it is not subject to harmless error review." *Maurino v. Johnson,* 210 F.3d 638, 645 (6th Cir. 2000) (citing *Chapman v. California*, 386 U.S. 18, 23 & n. 8 (1966)); *see also*, *Rose v. Clark*, 478 U.S. 570, 577 (1986) (citing *Tumey v. Ohio*, 273 U.S. 510 (1927)).

Habeas relief on the basis of judicial bias is appropriate only if "the state trial judge's behavior rendered the trial so fundamentally unfair as to violate federal due process under the United States Constitution." *Duckett v. Godinez*, 67 F.3d 734, 740 (9th Cir. 1995). As a general matter, habeas relief will be appropriate only upon a showing that the trial judge was actually biased or prejudiced against the petitioner. *See Fero v. Kerby*, 39 F.3d 1462, 1478 (10th Cir. 1994). However, in exceptional circumstances "the likelihood of bias or appearance of bias can, in certain circumstances, be so substantial as to create a conclusive presumption of actual bias." *Id.* (internal quotation omitted). The appearance of bias situation is limited to cases in which "a judge is faced with circumstances that present some actual incentive to find one way or the other[,]" *id.* (internal quotation omitted); *see also*, *Del Vecchio v. Illinois Dep't of Corrections*, 31 F.3d 1363, 1372 (7th Cir. 1994) (en banc), such as where the judge has a pecuniary interest in the outcome or has been the target of repeated abuse by one of the parties. *See Six v. Delo,* 885 F. Supp. 1265, 1271 (E.D. Mo. 1995), *aff'd*, 94 F.3d 469, 478 (8th Cir. 1996). As the Supreme Court has noted in the context of the federal recusal statute, "[t]he alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966); *see also, Liteky v. United States,* 510 U.S. 540, 549-51 (1994); *Browning v. Foltz,* 837 F.2d 276, 279 (6th Cir. 1988). For this reason,

> judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. In and of themselves (i.e., apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required … when no extrajudicial source is involved.

*Liteky*, 510 U.S. at 555. Thus, "[a] judge's ordinary efforts at courtroom administration-even a stern and short-tempered judge's ordinary efforts at courtroom administration-remain immune."

*Id.* Although *Liteky* was decided on the basis of the federal recusal statute, it provides guidance for resolving habeas claims of judicial bias. *See Maurino,* 210 F.3d at 645; *Poland v. Stewart,* 117 F.3d 1094, 1103-04 (9th Cir. 1997).

2.*Analysis*

Petitioner argues that he did not receive a fair trial by an impartial fact finder in light of the trial court's longstanding affiliation with Eastern Michigan University. The Michigan Court of Appeals rejected this claim and found that the petitioner had failed to satisfy his burden to "overcome a heavy presumption of judicial impartiality." *Green*, 2009 WL 316530, at *3. This conclusion was reasonable. The due process clause for judicial "disqualification for bias or prejudice is only constitutionally required in the most extreme cases." *Cain v. Dep't of Corrections,* 451 Mich. 470, 498, 548 N.W.2d 210 (1996). Here, the facts indicate that Judge Shelton is an adjunct professor at Eastern Michigan University, he attended the University and was a finalist for the position of President of the University. The limited affiliation with Eastern Michigan University falls "far short of substantiating any actual bias." *Green,* 2009 WL 316530, at *3. The petitioner has not alleged, nor is there evidence to suggest that Judge Shelton had an actual interest in the outcome of the petitioner's trial. Therefore, the petitioner is not entitled to relief. *See Railey v. Webb*, 540 F.3d 393, 413 (6th Cir. 2008) ("Petitioner is not entitled to relief unless he can demonstrate actual bias or lack of impartiality on the part of the trial judge.").

Judge Shelton's relationship with Eastern Michigan University has no relationship to the facts of this criminal case. The University is not a party in this action, the murder did not occur on Eastern Michigan University's campus, and other than the fact that the victim was an Eastern Michigan University student, there is no connection between the University and the crime. These facts do "not reach the level of a de minimis interest of the trial court that could be

'substantially affected' by defendant's trial." *Green,* 2009 WL 3165370, at *3. Nothing in the record supports a finding that Judge Shelton acquired "actual or constructive extra-judicial knowledge" used in his findings through his minimal associations with Eastern Michigan University. *Easley v. Univ. of Michigan Bd. of Regents*, 906 F.2d 1143, 1147 (6th Cir. 1990) (Judge's various associations with University of Michigan or its law school did not qualify for judicial bias).

Petitioner alleges that there is a connection between a 2006 murder of Laura Dickenson on the Eastern Michigan University campus and the current crime. However, the petitioner is unable to connect Judge Shelton to the Dickenson case and show any circumstance that Judge Shelton was partial to the petitioner's case because of it. Judge Shelton was not a regent or university official at the time of the Dickenson murder, nor did he preside over the trial in that case, which was held after petitioner's trial. Therefore, it could not have had an impact on Judge Shelton's decision in this case. The petitioner's claim of judicial bias fails the standard set forth in *Liteky.* Nothing in the record shows that Judge Shelton treated the petitioner unfairly.

Petitioner has failed to overcome the heavy presumption of impartiality to warrant disqualification. Petitioner's claim of judicial bias is without merit. The decision by the state appellate court was neither contrary to, nor an unreasonable application of, clearly established federal law. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on his judicial bias claim.

F.*Recommendation Regarding Certificate of Appealability*

1.*Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge

issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000). Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84. Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable." *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)). Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the

showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue." FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments. In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

### 2. *Analysis*

If the Court accepts my recommendation on the merits, the Court should also deny petitioner a certificate of appealability, for the reasons explained above. The record establishes sufficient evidence from the petitioner's DNA, along with the circumstantial evidence to adequately support the trial court's finding beyond a reasonable doubt, that the petitioner sexually assaulted the victim and killed the victim. Furthermore, the petitioner has failed to overcome the heavy presumption of impartiality to warrant judicial disqualification. Accordingly, the court should conclude that petitioner is not entitled to a certificate of appealability.

### G. *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus. If the Court accepts this recommendation, Court should also conclude that petitioner is not entitled to a certificate of appealability.

### III. NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but

are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE
Dated: 7/1/11

---

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and by electronic means or U.S. Mail on July 1, 2011.

s/Eddrey Butts
Case Manager